**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WISCONSIN**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

KATHERINE CORBETT, on behalf of herself and :
all others similarly situated, :

             :  Case No.: 3:26-cv-00208

     Plaintiffs,    :

             :

     v.       :  CLASS ACTION COMPLAINT

             :

Garmentory, Inc.,       :

             :

     Defendant.    :

             :

             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## <u>COMPLAINT</u>

1)   Plaintiff, KATHERINE CORBETT (hereinafter "CORBETT"), brings this action on behalf of herself and all other persons similarly situated (hereinafter "Class Members") against Garmentory, Inc. (hereinafter "Defendant"), and states as follows:

2)   Corbett is a visually-impaired and legally blind person who requires screen-reading software to read website content using her computer. Corbett uses the terms "blind" or "visually-impaired" to refer to individuals who meet the legal definition of blindness, in that they have a visual acuity with correction of less than or equal to 20 x 200. Some individuals who meet this definition have limited vision; others have no vision.

3)   Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2019 report, approximately 100,000 visually impaired individuals live in the State of Wisconsin.

4)      Corbett brings this civil rights action against Defendant for its failure to design, construct, maintain, and operate its Website https://garmentory.com (hereinafter "Website" or "the Website") to be fully accessible to and independently usable by Corbett and other blind or visually-impaired individuals. Defendant is denying blind and visually impaired individuals throughout the United States equal access to the goods and services Defendant provides to their non-disabled customers through the Website. Defendant's denial of full and equal access to its Website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Corbett's rights under the Americans with Disabilities Act (the "ADA").

5)      The Website provides to the public a wide array of the goods, services, price specials and other programs offered by Defendant. Yet, the Website contains significant access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the Website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the Website. Thus, Defendant excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. With technological advances in recent years, assistive computer technologies now play an essential role in enabling blind and visually impaired individuals to access digital content, allowing blind and visually-impaired individuals to fully and independently access a variety of services.

6)      Blind and visually impaired individuals often rely more heavily on online platforms due to mobility-related barriers. The lack of an accessible website means that visually impaired individuals are excluded from fully experiencing and transacting on the Website and from purchasing goods or services from the Website.

7)      Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen to rely on an exclusively visual interface that provides no meaningful accommodations for Screen-reader-users. Defendant's sighted customers can independently browse, select, and buy online without the assistance of others. However, visually impaired individuals must rely on sighted companions to assist them in accessing and purchasing on the Website.

8)      By failing to make the Website accessible to visually impaired individuals, Defendant is violating basic equal access requirements under both state and federal law.

9)      Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired individuals.

10)     Corbett browsed and intended to make an online purchase of a dress on the Website. Despite her efforts, however, Corbett was denied a shopping experience like that of a sighted individual due to the Website's lack of a variety of features and accommodations. Unless Defendant remedies the numerous access barriers on its Website, Corbett and Class Members will continue to be unable to independently navigate, browse, use, and complete a purchase on the Website.

11)     Because Defendant's Website is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Corbett seeks a permanent injunction to cause a change in Defendant's policies, practices, and procedures to that Defendant's Website will become and

remain accessible to blind and visually-impaired consumers. This complaint also seeks compensatory damages to compensate Class Members for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

12)    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Corbett's claims arise under Title III of the ADA, 42 U.S.C. § 12182, et seq.

13)    Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District because Corbett attempted to utilize, on a number of occasions, the subject Website within this Judicial District.

14)    Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Western District of Wisconsin that caused injury and violated rights the ADA prescribes to Corbett and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving rise to Corbett's claims occurred in this District: on several separate occasions, Corbett has been denied the full use and enjoyment of the facilities, goods and services offered to the general public, on Defendant's Website in Adams County. These access barriers that Corbett encountered have caused a denial of Corbett's full and equal access multiple times in the past, and now deter Corbett on a regular basis from accessing the Defendant's Website in the future.

15)    The United States Department of Justice Civil Rights Division has recently provided "Guidance on Web Accessibility and the ADA." It states in part, "the Department has

consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

16)    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

17)    This lawsuit is aimed at providing visually impaired users like Corbett a full and equal experience.

## THE PARTIES

18)    Corbett, is and has been at all relevant times a resident of Adams County, State of Wisconsin.

19)    Corbett is legally visually impaired and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq. Corbett, cannot use a computer without the assistance of screen reader software. Corbett has been denied the full enjoyment of the facilities, goods and services of the Website as a result of access barriers on the Website.

20)    Defendant, a Delaware Corporation, does business in this State with its principal place of business located at 255 South King Street, Suite 800, Seattle, WA 98104, represented by its agent, The Corporation Trust Company, located at 1209 Orange Street, Wilmington, DE 19801.

21)    Defendant provides to the public the Website, which provides consumers access to an array of goods and services, including, the ability to purchase a curated selection of contemporary apparel and accessories, including designer clothing, footwear, handbags, jewelry and other lifestyle goods. Consumers across the United States use Defendant's Website to purchase modern apparel and accessories. Defendant's Website is a place of public accommodation within

the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The inaccessibility of the Website has deterred, and continues to deter, Corbett from making an online purchase of a dress.

## NATURE OF THE CASE

22)     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

23)     Visually impaired individuals access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a visually impaired person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a visually impaired person can independently access the Internet. Unless websites are designed to allow for use in this manner, visually impaired individuals cannot fully access the information, products and services offered online.

24)     For screen-reading software to function properly, website content must be capable of being rendered accurately into text. If the website content is not capable of being rendered into text, the visually impaired user is unable to access the same content available to sighted users.

25)     Visually impaired users of -enabled computers and devices have several screen-reading software programs available to them. NonVisual Desktop Access, otherwise known as "NVDA", is currently one of the most popular, and downloaded screen-reading software programs available for blind computer users.

26)     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.2 of the Web Content Accessibility Guidelines ("WCAG 2.2"). WCAG 2.2 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by

most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.2 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including, but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that visually impaired persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a visually impaired individual using a screen reader. Furthermore, websites must be accessible to users of all proficiency levels, including screen-reader users with minimal technical experience of screen-reading software and need to be able to work with all browsers. Finally, websites need to be continually updated and maintained to ensure that they remain fully accessible.

## FACTUAL ALLEGATIONS

27)    Defendant controls and operates the Website in the State of Wisconsin and throughout the United States.

28)    The Website is a commercial platform through which consumers can browse and offers products and services for online sale. The online store allows the user to view modern fashion apparel and accessories, make purchases, and perform a variety of other functions.

29)    Among the features offered by the Website are the following:

a)    Consumers may use the Website to connect with Defendant on various social media platforms, including Facebook, Instagram, Pinterest;

b)    An online store that allows customers to purchase a curated selection of contemporary apparel and accessories, including designer clothing, footwear, handbags, jewelry, other lifestyle goods, and other products for delivery to their doorsteps; and

c)    Learning about shipping and return policies, reading reviews, purchasing gift cards, and learning about the company, amongst other features.

30)    This case concerns Defendant's policy and practice of denying visually impaired individuals access to the goods and services offered by the Website. Due to Defendant's failure and refusal to remove access barriers to the Website, visually impaired individuals have been and are being denied equal access to Defendant as well as to the numerous goods, services and benefits offered to the public through the Website.

31)    Defendant denies the visually impaired users access to goods, services and information made available through the Website by preventing them from freely navigating the Website.

32)    The Website contains access barriers that prevent free and full use by Corbett and visually impaired individuals using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: inadequate focus order, ambiguous link texts, changing of content without advance warning, unclear labels for interactive elements, and the requirement that transactions be performed solely with a mouse.

33)    Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change

the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on the Website that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a visually impaired computer user). As a result, Corbett and visually impaired individuals are unable to determine what is on the Website, browse the Website or investigate and/or make purchases.

34)     The Website also lacks prompting information and accommodations necessary to allow visually impaired shoppers who use screen-readers to locate and accurately fill-out online forms. Due to lack of adequate labeling, Corbett and visually impaired customers cannot make purchases or inquiries as to Defendant's merchandise, nor can they enter their personal identification and financial information with confidence and security.

35)     When visiting the Website using NVDA screen-reader, Corbett encountered the following specific accessibility issues:

> a) Different images of the same product had similar and poorly descriptive alternative text. Plaintiff could not learn more detailed information about the product and its features;

> b) Sub-menu elements with drop-down menus were inaccessible via keyboard. Plaintiff could not interact with sub-menus using "tab" or "arrow" keys. The website had device-specific functionality, like mouse-dependency, making it inaccessible to legally blind users;

> c) When opening a dialog, focus order did not move from trigger button to dialog items. Plaintiff was confused while navigation, encountering information in an

inconsistent order with the meaning of the content that could not be operated from the keyboard;

d) Plaintiff encountered interactive images that were used as links that did not describe the content of the link target. There were no details what kind of information can be found on the destination page;

e) Plaintiff was forced to repeatedly tab through elements with the same destination: the link text of products conveyed similar information and led to the same destinations as interactive images above the links;

f) Plaintiff was disoriented when the automatic pop-up window appeared on the web page. Plaintiff, as a legally blind user, had significant difficulty knowing when automatic visual context change had occurred, such as a new window popping up;

g) Interactive elements on the web page had inappropriate and non-descriptive name. Plaintiff could not identify the purpose of the interactive element;

h) In an attempt to add the selected item to cart, Plaintiff encountered a warning message that was not announced by the screen reader software. Plaintiff was not informed about any incorrect actions on the stage of choosing product`s parameters.

36)    Consequently, visually impaired customers are essentially prevented from purchasing any items on the Website.

37)    The Website requires the use of a mouse to complete a transaction. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Corbett and visually impaired people, it must be possible for the user to interact with the page using only the keyboard.

Indeed, Corbett and visually impaired users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, the Website's inaccessible design, which requires the use of a mouse to complete a transaction, denies Corbett and visually impaired customers the ability to independently navigate and/or make purchases on the Website.

38)     Due to the Website's inaccessibility, Corbett and visually impaired individuals must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers. Some visually impaired customers may require a driver to get to the stores or require assistance in navigating the stores. By contrast, if the Website was accessible, a visually impaired individual could independently investigate products and make purchases via the Internet as sighted individuals can and do. According to WCAG 2.2 Guideline 2.4.2 'Focus Order', the focus must move in a predictable and logical order through all interactive elements on the page. Ensuring proper focus order enables users, including those using assistive technologies such as screen readers or keyboard-only navigation, to navigate the content efficiently. If the focus order is not logically structured, users may become disoriented, making it difficult for them to understand or interact with the page's elements. This can significantly impair the accessibility and usability of a website for individuals with disabilities. Thus, Defendant's inaccessible design deprives Corbett and visually impaired customers of the opportunity to make purchases on the Website on their own.

39)     The Website thus contains access barriers that deny full and equal access to Corbett, who would otherwise use the Website and who would otherwise be able to fully and equally enjoy the benefits and services of the Website in Wisconsin State and throughout the United States.

40)    Corbett has made an attempt to complete a purchase on the Website. On October 21, 2025, she was looking for clothing items, specifically a dress, and started searching online. During her search among popular products, she came across the Defendant's website, Garmentory.com. Positive reviews highlighting its unique selection of brands and independent boutiques, fast shipping, and good quality items, encouraged Corbett to explore Defendant's website with the intention to make a purchase. However, while navigating the Defendant's website, Corbett encountered multiple accessibility barriers. Specifically, multiple images of the same product contained identical or non-descriptive alternative text, preventing Corbett from obtaining detailed product information. In addition, when Corbett attempted to add a product to her cart, a dialog box appeared, but keyboard focus did not move to the cart's open dialog interface, preventing her from viewing the cart or proceeding to checkout. As a result, she was ultimately prevented from completing her intended purchase. These access barriers render the Website inaccessible to, and not independently usable by, blind and visually impaired individuals.

41)    Moreover, Corbett will visit the website again immediately upon Defendant correcting the numerous accessibility barriers on it. Corbett wants to purchase fashion items for everyday wear. She would like to order such products to be shipped directly to her home from the Defendant's Website. If the Court does not intervene, Corbett's injury will continue. Corbett still wants to purchase a dress on the Website.

42)    As described above, Corbett has actual knowledge of the fact that Defendant's Website, contains access barriers that render the Website to be inaccessible, and not independently usable by, visually impaired individuals.

43)    These barriers to access have denied Corbett full and equal access to, and enjoyment of, the goods, benefits and services of the Website.

44)    Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

        a)    constructed and maintained a website that is inaccessible to visually impaired Class Members with knowledge of the discrimination; and/or

        b)    constructed and maintained a website that, despite being sufficiently intuitive for sighted users, is inaccessible to visually impaired Class Members; and/or

        c)    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to visually impaired Class Members.

45)    Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

46)    Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of Garmentory.com, Plaintiff and the class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of Defendant's conduct.

47)    Defendant owed a duty of care to Plaintiff as a user of its Website. Moreover, Defendant knew or should have known that there was a likelihood of harm to Plaintiff as a result of its failure to maintain an accessible website for individuals with disabilities.

48)    Defendant breached that duty of care by failing to maintain an accessible website for visually impaired individuals.

49)    Defendant could reasonably foresee that the inaccessibility of its Website could cause severe emotional distress in individuals with disabilities.

50)    As a result of direct and proximate cause of Defendant's conduct, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation,

emotional and mental anguish, violation of privacy, humiliation, stress, anger, frustration, embarrassment, and anxiety.

## CLASS ACTION ALLEGATIONS

51) Corbett, on behalf of herself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access the Website and as a result have been denied access to the enjoyment of goods and services offered by the Website, during the relevant statutory period."

52) There are common questions of law and fact common to the class, including without limitation, the following:

(a) Whether the Website is a "public accommodation" under the ADA;

(b) Whether Defendant, through its Website, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to individuals with visual disabilities in violation of the ADA;

53) Corbett's claims are typical of the Class. The Class, like Corbett, is composed of severely visually impaired or otherwise blind, and claim that Defendant has violated the ADA by failing to update or remove access barriers on its Website so either can be independently accessible to the Class.

54) Corbett will fairly and adequately represent and protect the interests of the members of the Class because Corbett has retained and is represented by counsel competent and experienced in complex class action litigation, and because Corbett has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2)

because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Corbett and the Class as a whole.

55)     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class Members clearly predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

56)     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by individuals with visual disabilities throughout the United States.

**FIRST CAUSE OF ACTION**
***Violation the Americans with Disabilities Act ("ADA")***

57)    Corbett, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

58)    Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12112(b)(3)(A).

59)    The Website is a place of public accommodation within the definition of 42 U.S.C. §§ 12181(7).

60)    Defendant is subject to Title III of the ADA because it owns and operates the Website.

61)    Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

62)    Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

63)    Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

64)    In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

65)    There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

66)    The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 et seq., and the regulations promulgated thereunder. Patrons of Defendant who are visually impaired have been denied full and equal access to the Website, have not been provided services

that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

67)    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

68)    As such, Defendant discriminates, and will continue in the future to discriminate against Corbett and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. and/or its implementing regulations.

69)    Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Corbett and members of the proposed class and subclass will continue to suffer irreparable harm.

70)    The actions of Defendant were and are in violation of the ADA, and therefore Corbett invokes her statutory right to injunctive relief to remedy the discrimination.

71)    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Corbett, requests relief as set forth below.

## SECOND CAUSE OF ACTION
### *Declaratory Relief*

72)    Corbett, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

73)    An actual controversy has arisen and now exists between the parties in that Corbett contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying visually impaired customers the full and equal access to the products, services and facilities of its Website, which Defendant owns, operates and controls, fails to comply with

applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.

74)    A judicial declaration is necessary and appropriate so that the parties may understand their respective rights and obligations and act accordingly.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

a)  A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and the laws of Wisconsin;

b)  A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by visually impaired individuals;

c)  A declaration that Defendant owns, maintains, and operates the Website in a manner that discriminates against the visually impaired and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, and the laws of Wisconsin;

d)  An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Corbett as Class Representative, and her attorneys as Class Counsel;

e)  Pre- and post-judgment interest;

f) An award of costs and expenses of this action together with reasonable attorneys' and expert fees;

g) Such other and further relief as this Court deems just and proper.


Dated:   March 13, 2026

EQUAL ACCESS LAW GROUP, PLLC
*Attorneys for Plaintiff*
**/s/ David B. Reyes**
By: David B. Reyes, Esq.
68-29 Main Street,
Flushing, NY 11367
O: 844-731-3343
D: 718-554-0237
Email: Dreyes@ealg.law